## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

BILLY RAY DAVIS,                    :
AIS 138614,

                                    :

    Petitioner,

                                    :

vs.                                          CA 05-0647-WS-C

                                    :

BILLY MITCHEM,

                                    :

    Respondent.


## <u>REPORT AND RECOMMENDATION</u>

Billy Ray Davis, a state prisoner presently in the custody of the respondent, has petitioned this Court for federal habeas corpus relief pursuant to 28 U.S.C. § 2254.  Petitioner is challenging the validity of his June 14, 1984 first-degree rape and first-degree burglary convictions in the Circuit Court of Escambia County, Alabama. On July 17, 1984, Davis was sentenced to life imprisonment on the rape conviction and thirty (30) years imprisonment on the burglary conviction. Petitioner's direct appeal of his convictions and sentences was dismissed by the Alabama Court of Criminal Appeals on June 26, 1986 due to his escape from prison. Davis collaterally attacked his convictions and sentences via a Rule 32 petition filed in the Circuit Court of Escambia County,

Alabama on September 27, 2002. The trial court dismissed the petition by final order dated February 9, 2004. The Alabama Court of Criminal Appeals affirmed the trial court's dismissal of the petition by memorandum decision entered on August 13, 2004. *Davis v. State*, 920 So.2d 611 (Ala.Crim.App. 2004) (table). Davis' request for rehearing was denied on September 3, 2004, and his petition for writ of certiorari was denied on November 12, 2004, *Ex parte Davis*, 923 So.2d 1157 (Ala. 2004).

In his petition before this Court, filed on October 20, 2005 (Doc. 1, at 26 (date Davis signed the petition)), Davis raises the following grounds which he claims entitle him to relief:

(1)     his conviction was obtained by the prosecution's failure to disclose evidence favorable to the defendant;

(2)     he was denied the effective assistance of trial counsel; and

(3)     newly discovered material facts exist which require the vacation of his convictions and sentences.

The respondent has admitted that petitioner has exhausted his state court remedies (Doc. 20, at 5) but contends that petitioner's claims have not been timely raised and are procedurally defaulted.  This case is ripe for a decision by this Court.

This cause is before the Court on the petition, the respondent's answer with attachments, Davis' lengthy response to the answer, and respondent's response to a court order to expand the record. A careful review of the record has been completed and it is determined that it contains sufficient facts upon which the issues under consideration may be properly resolved. Therefore, no evidentiary hearing is required.

## FINDINGS OF FACT

1.    Petitioner was convicted in the Circuit Court of Escambia County, Alabama, on June 14, 1984, of first-degree rape and first-degree burglary. (Doc. 1, Attached Brief, at 8)  Ginger Peacock testified that on the night of October 18, 1983, she was raped inside her home by a man sporting coarse kinky hair and a closely cropped beard. (Doc. 27, T.T. at 9 & 32-37; *see also* T.T. at 67 (her assailant's hair had a red tint to it); *see id*. at 95 (Sheriff Tim Hawsey's testimony that Peacock told him her rapist had the features of a black man but that he was not black))[1] According to Peacock, her assailant "kept sucking through his teeth[]" and sniffing. (*Id*. at 36) The victim identified Davis in court as the man who raped her. (*Id*. at 42)

---

[1]    The medical evidence, including a tear in the vaginal area, was consistent with Peacock having been raped. (*Id*. at 137; *see also id*. at 138 (in Dr. William Thomas' medical opinion, Peacock was forcibly raped))

2.     It is clear from the testimony at trial that the Sheriff's Department, based upon Peacock's description of her assailant, quickly focused upon one of the Davis brothers as the man who raped Peacock and burglarized her home. (*See id*. at 45 & 96) Sometime during the early morning hours of October 19, 1983, Peacock was shown photographs of the three Davis brothers, Emmett, Billy and Jimmy (*see id*. at 96); Peacock identified Emmett Davis as her assailant the day after the rape (*id*. at 45, 55, 97 & 123)[2] and did so again at the preliminary hearing (*id*. at 54 & 118). However, approximately four months later, in February of 1984, Peacock identified petitioner as her assailant from a lineup that allowed her to hear the voices of the lineup participants and detect the mannerisms of those men. (*See id*. at 47, 49-50 (Billy Davis "sniffed" and "sucked through his teeth" whereas Emmett Davis did not display these mannerisms); *id*. at 69 (Emmett Davis had almost the same voice as his brother and looked very much like his brother but did not have the sucking and sniffing mannerisms that his brother displayed)[3]; *id*. at

---

[2]     Emmett Davis was arrested that day for Peacock's rape. (*Id*. at 131 & 148)

[3]     Sheriff's investigator David Ragan testified that Billy Davis sucked air through his teeth as if he had something stuck. (*See id*. at 189; *but cf. id*. at 243 (the testimony of Davis' sister, Joyce Brantley, that her brother Emmett was the one that sucked through his teeth); *id*. at 248 (testimony of hospital security guard Frank Wymola that Emmett displayed the mannerism of "clearing his teeth of debris"))

112 (Hawsey's testimony regarding Peacock's identification of Billy Davis as her assailant))[4]

3.     The forensic evidence established that Peacock had type O blood but that she was a non-secretor;[5] therefore, none of her blood types were being secreted into her vaginal fluid. (*Id*. at 158) The evidence established, however, that Billy Davis was a blood type group A secretor. (*Id*. at 160) "Based on the findings on the vaginal swab of A and H blood group types we knew that the individual who contributed the seminal fluid would have to be a group A secretor, which Billy Davis was." (*Id*.) Because thirty-five percent (35%) of the population secrete this blood group (*id*. at 161), 3.5 people out of ten could have been the perpetrator (*see id*. at 162). With respect to hair samples taken from Billy and Emmett Davis, the forensic expert, Elaine Scott, gave the following testimony: "[B]ecause they are brothers or related, there were not sufficient characteristic differences in their samples to tell one individual from the other individual. Both individual's hair samples could possibly have been

---

[4]     Mike and Linda Whitehead placed a blue Chevrolet pickup truck, like the one owned by Billy Davis (*id*. at 89-90), near Peacock's residence at approximately 9:00 p.m. on the night of October 18, 1983 (*see id*. at 76-77 & 85)

[5]     "Approximately eighty-five percent of the population will secrete their blood group type in their body secretions, such as saliva or sweat or vaginal fluid or seminal fluid. So in order to determine the secretor status of a victim and whether they are secreting their blood group types in their body fluids we take a saliva sample from any individual involved." (*Id*. at 157-158)

the hair samples present on Mrs. Peacock. There were not sufficient characteristics to eliminate either one of them as having been the contributor of the hair samples present on Mrs. Peacock." (*Id*. at 164)[6]

4.      Davis' defense was that he was babysitting one of his sister's children on the date and at the time Peacock was raped and her house burglarized. (*See id*. at 211-212, 227-228, 251 & 273-274) It was the testimony of Davis (*see id*. at 274), as well as that of his two sisters and wife, that his truck was at his one sister's house all night on the night in question and that he had to get his car jumped off before leaving her house (*see, e.g. id*. at 212 & 228).

5.      On June 15, 1984, Billy Davis was convicted of the first-degree rape of Ginger Peacock and the first-degree burglary of Peacock's home. (*See id*. at 316-317)  On July 17, 1984, Davis was sentenced to life imprisonment on the rape conviction and thirty (30) years imprisonment on the burglary conviction. (*Id*. at 326) Petitioner gave oral notice of appeal on July 17, 1984. (*Id*. at 327)

6.      Davis' direct appeal was dismissed by the Alabama Court of

---

[6]      Blood tests did, however, eliminate Emmett Davis as the rapist; Emmett is a group O secretor and, therefore, could not have contributed the seminal fluid found on Peacock. (*Id*. at 165-166) Moreover, the evidence established that Emmett Davis was in Pensacola, Florida at the time the rape occurred. (*See id*. at 203-204 & 249)

Criminal Appeals on June 26, 1986 due to his escape from prison. (Doc. 1, at 2)

7.      Davis collaterally attacked his convictions and sentences via a Rule 32 petition filed in the Circuit Court of Escambia County, Alabama on September 27, 2002. (Doc. 27, Part I, Case Action Summary Sheet) The trial court dismissed the petition by final order dated January 15, 2004.[7]

_____

[7]      On June 18, 2003, the trial court entered an order dismissing two of the three grounds asserted by Davis in his Rule 32 petition. (Doc. 27, June 18, 2003 ORDER)

This matter comes before the Court on the motion to dismiss filed by the State of Alabama. The respondent alleges in the motion to dismiss that the petitioner is precluded pursuant to Rule 32.2(a) of the Alabama Rules of Criminal Procedure and further that the claims are barred by the limitations period set forth in Rule 32.2(c) of the Alabama Rules of Criminal Procedure.

.      .      .

In his post-conviction petition, the petitioner seeks relief pursuant to Rule 32.1(a) of the Alabama Rules of Criminal Procedure in that the Constitution of the United States or of the State of Alabama requires a new trial, a new sentence proceeding, or other relief. More specifically, the petitioner alleges that his conviction was obtained by the unconstitutional failure of the prosecution to disclose to the defendant evidence favorable to the defendant and that the petitioner was denied effective assistance of counsel. The Court finds that these claims for relief are barred by the limitation period set forth in Rule 32.2(c) of the Alabama Rules of Criminal Procedure. The petitioner's appeal was dismissed by the Alabama Court of Criminal Appeals on June 26, 1986. . . . The current and only Rule 32 petition filed by the petitioner was filed on September 27, 2002. The limitations period did not begin to run until April 1, 1987 when the precursor to Rule 32 was adopted. Accordingly, these claims were not brought within the applicable limitations period and are now barred.

As for the remaining claim for relief based upon newly discovered material facts, the motion to dismiss is taken under advisement. In lieu of an

1.    The State's motion to dismiss and renewed motion to dismiss are granted. The petitioner has failed to satisfy the requirements of Rule 32.1(e) of the Alabama Rules of Criminal Procedure. The petitioner has not presented any newly discovered material facts which establish that the petitioner is innocent of the crime for which he was convicted. The affidavit of David Ragan[8] refutes most of the allegations relied on by the

---

evidentiary hearing, the Court will take evidence on this issue by affidavits, written interrogatories or depositions. The petitioner and respondent shall have forty-two (42) days to submit additional evidence and briefs.

(*Id.*)

[8]    Ragan's affidavit reads, in relevant part, as follows:

In 1983, I was employed as an investigator with the Escambia County Sheriff's Department. I have read the affidavit of James C. McCloskey dated September 17th, 2002, specifically as it relates to Mr. McCloskey's conversations with me as set forth in paragraph 8 of his affidavit. The first time I talked with Mr. McCloskey was at least a year prior to September 2002 at which time I gave him all of the information that I had or that I knew about the rape of Ginger Peacock, the prosecution of Billy Ray Davis and a person named Robert L. Williams.

The allegations contained in Mr. McCloskey's affidavit as they relate to my conversations with him are basically incorrect and misleading except for the fact that I was an investigator for the Escambia County Sheriff's Department in 1983 and was one of the law enforcement officers investigating the rape of Ginger Peacock. I never told Mr. McCloskey that I thought Robert L. Williams fit the description of the rapist. I never thought Robert L. Williams fit the description of the rapist. I do not have any recollection of ever having known the approximate age of Robert L. Williams. Prior to the rape of Ginger Peacock to my knowledge I had never laid eyes on or knew what Robert L. Williams even looked like. Mr. McCloskey's characterization that "while investigating the rape of Ginger Peacock I became suspicious that Robert L. Williams may have committed the crime: 1. Because he fit the description; 2. That he lived approximately one mile from the victim; and 3. That he owned a truck like the one described to have been parked near the scene", is not true for the following reasons:

1.    I never considered Robert Williams to be a suspect.

8

2.      I never stated or thought that Robert Williams fit the description provided by the victim.

3.      I never determined that Robert Williams owned a truck at all, much less a truck that was just like the truck owned by Billy Ray Davis.

4.      Robert L. Williams' mother had a residence approximately one mile from the residence [of] the victim. However, I determined that Robert L. Williams was not living there during the time of the rape but was in Detroit, Michigan with his brother.

5.      I did see a blue truck at the home of Robert L. Williams' mother which is located approximately one mile from the victim's home.

6.      I did not determine that this truck belonged to Robert Williams.

Mr. McCloskey's characterization that I went to Robert Williams' home and found that Robert Williams had "disappeared and left town" is incorrect and inaccurate. I never determined that Robert Williams had a "home" in Escambia County, Alabama. I went to his mother's home to speak with him and his mother told me that he was in Detroit, Michigan, staying with his brother. She gave me the telephone number which I called. I spoke with Robert Williams['] brother and learned that Robert L. Williams had been in Detroit for at least two weeks prior to and on the date of and since the date of the rape of Ginger Peacock.

Mr. McCloskey's statement that "David Ragan reported his investigation of Robert L. Williams for the rape of Ginger Peacock to the Sheriff of Escambia County, Alabama["] is a mischaracterization. I did not investigate Robert L. Williams for the rape of Ginger Peacock. I may have reported to the Sheriff that I saw a blue truck at a residence near the victim's residence but I never connected this truck with Robert L. Williams.

Mr. McCloskey's statement that "Robert Williams had been reported to law enforcement for committing acts of violence involving weapons" is very misleading. Prior to the date upon which the victim in this case was raped, I had no knowledge of Robert Williams being reported to law enforcement for anything.

J.R. Tucker, the attorney for Billy Ray Davis, did not ask me any questions relating to Robert L. Williams. Tucker did not even ask me if there were any other suspects. However, if he had, I would have told him no as I did

petitioner.[9]

---

not consider Robert L. Williams to be a suspect in this case. I did not tell Mr. McCloskey anything about not disclosing information to J. R. Tucker because it was not part of my job duties. The only time I spoke with Mr. Tucker about this case was during the trial as a sworn witness in open court and I truthfully answered all the questions Mr. Tucker asked me.

I do recall that during the trial, Billy Ray Davis' wife testified that Billy Ray Davis was with her during the time of the rape of the victim and therefore could not have been the person who raped Ginger Peacock. After the trial in the course of investigating other crimes, I had an occasion to talk with the wife of Billy Ray Davis. At this time she admitted to me that she had lied on the witness stand when she gave Billy Ray Davis an alibi. She admitted to me that she was not, in fact, with Billy Ray Davis on the night that Ginger Peacock was raped.

(Doc. 27, Affidavit of David B. Ragan)

[9] In support of his new evidence claim, Davis submitted the September 17, 2002 affidavit of James NcCloskey, same reading, in relevant part, as follows:

3. I am the President of Centurion Ministries, a non-profit organization headquartered in Princeton, New Jersey. The primary mission of Centurion Ministries is to free and vindicate from prison those who are completely innocent of the crimes for which they have been wrongly convicted and imprisoned. . . .

4. In August of 1999, Centurion Ministries was contacted by Billy Ray Davis. Mr. Davis requested that Centurion Ministries investigate his claims of innocence and assist him in attempting to establish his innocence and vacate his conviction.

5. Over the course of the next 2 years, Centurion Ministries investigated Mr. Davis' claims of innocence. . . .

6. While investigating Mr. Davis' case, I came to believe that he was innocent of the crimes for which he was convicted. This belief was based upon a review of the evidence and testimony submitted in his trial, [and] was reinforced by the fact that no appellate court has ever reviewed the issues or evidence presented at Mr. Davis' trial and by my investigation.

---

7.    In 2001, Centurion Ministries agreed to assist Mr. Davis and retained legal counsel for Mr. Davis in the State of Alabama to assist with the investigation.

8.    During the course of the investigation, I met with David Ragan, 535 South Road, Atmore, AL, (251) 368-9154, on several occasions. During the course of these meetings, Mr. Ragan told me that:

.        .        .

In 1983, at the time of the rape of Ginger Peacock, Robert L. Williams lived approximately 1 mile from the victim, Ginger Peacock. Robert L. Williams is a light-skinned, black male, approximately 30 years of age at the time of the offense, with bushy hair, who Ragan thought fit the description of the rapist.

While investigating the rape of Ginger Peacock, David Ragan became suspicious that Robert L. Williams may have committed this crime because (1) he fit the description provided by the victim, (2) he lived approximately 1 mile from the victim, [and] (3) he owned a truck like the one described by witnesses to have been parked near the scene of the crime at the time of the rape. This truck was also just like the truck owned by Billy Ray Davis.

David Ragan had run a DMV check of Chevrolet trucks like the one reported to be at the scene of the crime and Robert Williams' truck was on the list. David Ragan went to Robert Williams' home to check on the truck and observed it at Robert Williams' home. When David Ragan went to Robert Williams' home, he found that Robert Williams had disappeared and left town.

David Ragan reported his investigation of Robert L. Williams for the rape of Ginger Peacock to the Sheriff of Escambia County, Alabama.

Robert Williams had been reported to law enforcement for committing acts of violence involving weapons.

11

J. R. Tucker, the attorney for Billy Ray Davis, did not ask
David Ragan any questions relating to his investigation of this
additional suspect, and David Ragan did not disclose this
information to him because it was not part of his job duties.

Robert L. Williams was later placed into an institution for
the criminally insane in Florida based upon a criminal charge.

9.      To further determine the validity of Robert L. Williams as a
suspect, I traveled to Pensacola, Florida and met with Joyce MacMillan, Robert L.
Williams' Correctional Probation Officer. Ms. MacMillan is employed by the
Florida Department of Corrections, Probation & Parole Services, 3101 N. Davis
Hwy., Pensacola, Florida 32503, and her telephone number is (850) 595-8845.

10.     Ms. MacMillan confirmed the following facts:

As part of her job, she has supervised the probation/parole of
Robert L. Williams. Robert L. Williams is a black male, 5'7" tall,
approximately 150 lbs., with light to medium, colored skin.

Robert L. Williams was charged with criminal offenses in
Escambia County, Florida in February 1988, based upon an
incident in which he fired a weapon at police officers. Robert L.
Williams was found incompetent to stand trial and was
hospitalized at the Chattahoochie mental hospital for
approximately 5½ years. Robert L. Williams was found fit for trial
and found guilty in 1993 of aggravated assault with a firearm,
attempted manslaughter, two counts of resisting arrest with
violence, carrying a concealed weapon and discharging a firearm
in public. He was placed on probation. In 1998, Robert L.
Williams was found to be in technical violation of his probation,
was again found incompetent to stand trial and was hospitalized at
the Chattahoochie mental hospital for the criminally insane where
he remains today.

According to Ms. MacMillan, Robert L. Williams has a habit of
sucking through his teeth. Her supervisor also recalled this habit.

(Doc. 27, Affidavit of James C. McCloskey)  McCloskey supplied the trial court with a

_____

supplemental affidavit dated September 23, 2003. (Doc. 27, SUPPLEMENTAL AFFIDAVIT OF JAMES C. McCLOSKEY)

    3.    Since the filing of Billy Ray Davis's Rule 32 Petition, I have continued to investigate this case and the connection between Robert L. Williams and this crime.

    4.    On Wednesday, September 3, 2003, I visited with Robert L. Williams' older sister, Ethel Montgomery, at her home in Pensacola, Florida.

    5.    When I asked her to provide me with a physical description of Robert L. Williams as he appeared in 1983, she described him as being about 5'6" in height with "fair skin complexion" with head hair that was "a little bushy" and "thick on his head" and was "a little reddish." When I asked her to elaborate on what she meant by fair skinned, she said his skin complexion was "much lighter than me and I'm medium brown."

.    .    .

    7.    Ethel Montgomery also confirmed that back in 1983 her mother owned an "old, blue Chevy pick-up truck" and that Robert has access to that vehicle. When Ethel was asked what year model truck this was, she responded "old, very old." In October 1983, Billy Ray Davis owned a 1971 blue Chevy pick-up truck. This type of vehicle was seen near the Peacock home by neighbors who drove by during the time of Ginger Peacock's assault.

    8.    Ethel Montgomery described her brother, Robert L. Williams, as a person who never told anyone what he was up to or what he was thinking. His family is at a complete loss as to why Robert had his mental breakdown.

.    .    .

    10.    I was further able to determine that Robert L. Williams received medical care and/or mental health treatment from the University of West Florida Hospital and from Lakeview Center, 1221 W. Lakeview Avenue, Pensacola, Florida 32501, an affiliate of Baptist Healthcare. The medical records at these facilities should contain Robert L. Williams' blood type.

(*Id.*)

2.    That the motion to obtain records is neither granted nor denied. Under Rule 17.3 of the Alabama Rules of Criminal Procedure, the petitioner could issue a subpoena duces tecum to an Alabama hospital for the production of these records. This Court does not have jurisdiction to order the production of records from an (sic) hospital located in the State of Florida. Even if these records were obtained and they established that Robert Williams had type A blood, this information would not exonerate the petitioner. The petitioner was found to be a type A secretor and the victim's assailant was a type A secretor. Forty percent (40%) of the population has type A blood. Therefore, even if it were proven that Robert L. Williams was a type A secretor, these facts would not constitute newly discovered material facts that would require a new trial under Rule 32.1(e) of the Alabama Rules of Criminal Procedure.

(Doc. 27, January 15, 2004 ORDER (footnotes added)) Petitioner filed written

notice of appeal on February 9, 2004. (Doc. 27, NOTICE OF APPEAL)

8.    The Alabama Court of Criminal Appeals affirmed the trial

court's dismissal of the petition by memorandum decision entered on August

13, 2004. *Davis v. State*, 920 So.2d 611 (Ala.Crim.App. 2004) (table).

The appellant, Billy Ray Davis, filed a Rule 32, Ala.R.Crim.P., petition, attacking his convictions for first-degree rape and first-degree burglary. He was sentenced to life imprisonment for the rape conviction and to 30 years' imprisonment for the burglary conviction. This Court granted the State's motion to dismiss Davis's appeal after he escaped from the custody of the Department of Corrections.

Davis argued in his Rule 32 petition that he was denied effective assistance of trial counsel; that his conviction was obtained by the State's failure to disclose exculpatory evidence pursuant to Brady v. Maryland, 373 U.S. 83 (1963); and that

14

newly discovered evidence exists which requires that his conviction[s] be vacated. He predicated all of these claims on his allegation that another person committed the crimes for which he was convicted. In support of his petition, Davis attached his personal affidavit and the affidavit of James C. McCloskey. McCloskey's affidavit alleged that the investigating officer, David Ragan, had stated that there was another suspect but that he had failed to disclose this information to the defense "because it was not part of his job duties." The trial court dismissed Davis's ineffective-assistance-of-counsel and <u>Brady</u> claims as time-barred and ordered the submission of evidence in the form of affidavits, written interrogatories, or depositions on the issue of newly discovered evidence. The State moved to dismiss, attaching to its answer David Ragan's affidavit. In his affidavit, Ragan refuted the claims made by McCloskey, stating that he had never considered another suspect in this case. Davis submitted a second affidavit from McCloskey, which gave a physical description of the alleged other suspect. The trial court summarily denied Davis's petition on grounds that his argument did not satisfy the requirements of Rule 32.1(e), Ala.R.Crim.P.

A review of the record indicates that the trial court's summary dismissal of Davis's petition was proper. Rule 32.7(d), Ala.R.Crim.P. "Although a new trial may be granted on grounds of newly discovered evidence which tends to prove that the crime for which the accused has been convicted was actually committed by another, the awarding of a new trial 'rests in the sound discretion of the trial court, and depends largely on the credibility of the new evidence.'" <u>Robinson v. State</u>, 389 So.2d 144, 149 (Ala.Crim.App. 1980), quoting, <u>Prince v. State</u>, 356 So.2d 750, 751 (Ala.Crim.App. 1978). Here, Davis alleged that he was innocent of the crimes of first-degree rape and first-degree burglary, but offered no evidence tending to show either his innocence or the guilt of another person. He argued merely that the State was aware of the existence of another suspect who may have committed these offenses. Davis's claim that the State withheld exculpatory evidence was contradicted by Ragan's affidavit. Moreover, Davis has failed to show that he raised this

15

claim within six months of the discovery of the new evidence. Rule 32.2(c)(2).

Also, the trial court correctly found that both Davis's Brady claim and his claim against trial counsel were precluded by Rule 32.2(c), Ala.R.Crim.P. Because neither of these claims is jurisdictional, they are subject to the procedural bars of Rule 32. See McWilliams v. State, [Ms. CR-01-0235, Apr. 30, 2004] ____ So.2d ____ (Ala.Crim.App. 2004); Cogman v. State, 852 So.2d 191 (Ala.Crim.App. 2002). As Davis's convictions became final in 1986, this petition exceeds the two-year statute of limitations set out in Rule 32.2(c).

Finally, Davis argues that the trial court erred in denying his Rule 32 petition without first conducting an evidentiary hearing. Davis is not entitled to relief on this claim. Rule 32.9(a), Ala.R.Crim.P., provides that "[t]he [trial] court may in its discretion take evidence by affidavits, written interrogatories, or depositions, in lieu of an evidentiary hearing . . ."

Summary disposition of Davis's Rule 32 petition was warranted. The judgment of the trial court is affirmed.

(Doc. 20, Exhibit D) Davis' request for rehearing was denied on September 3, 2004, and his petition for writ of certiorari was denied on November 12, 2004, *Ex parte Davis*, 923 So.2d 1157 (Ala. 2004).

9.     In his petition before this Court, filed on October 20, 2005, Davis raises the following grounds which he claims entitle him to relief: (1) his conviction was obtained by the prosecution's failure to disclose to the defendant evidence favorable to the defendant; (2) he was denied the effective assistance of trial counsel; and (3) newly discovered material facts exist which

16

require the vacation of his convictions and sentences. (Doc. 1; *see also* Doc. 6 (same))

10.     In responding to the arguments that his claims are time-barred and/or procedurally defaulted, Davis has filed a lengthy pleading (Doc. 23), which includes the following:

> The facts relied upon were not known by petitioner or petitioner's counsel at the time of trial or sentencing or in time to file a post-trial motion pursuant to Rule 24, or in time to be included in any previous collateral proceeding, and could not have been discovered at any of those times through the exercise of reasonable diligence.
>
> The essential facts relied upon [in] this case to establish the Brady and/or ineffective assistance of counsel claims are the existence of another person who **may** have committed this crime (Robert L. Williams) who fit the description of the assailant, who owned a truck identical to the one observed near the scene of the crime and who lived in the immediate vicinity of the crime scene. This information was not known to Billy Ray Davis at the time of his trial and could not have reasonably been discovered by him.
>
> Billy Ray Davis was never informed of the existence or identity of another person who may have committed this crime prior to his trial or at any time after his trial until he recently learned of this person (Robert L. Williams) from Mr. McCloskey and his attorney.
>
> .     .     .
>
> The facts relied upon by Billy Ray Davis establish that he is innocent of the crimes for which he was convicted. The identity of Robert L. Williams as the likely perpetrator is clearly

evidence supporting this assertion of innocence. Evidence, not known to [the] accused at his trial, which will tend to prove that the crime of which he has been convicted was committed by another person, may be ground[s] for a new trial.

.   .   .

The Alabama Rules of Criminal Procedure do not apply to this petition for post-conviction relief as the underlying conviction occurred prior to January 1, 1991. . . . Therefore, the petition for post-conviction relief filed by Billy Ray Davis is in the nature of a coram nobis and/or a habeas corpus petition. As such the procedural Rule 32 does not apply.

.   .   .

The State of Alabama is required to plead the ground or grounds of preclusion that it believes apply to the petitioner's case, thereby giving the petitioner the notice he needs to formulate arguments and present evidence to disprove the existence of those grounds by a preponderance of the evidence. . . . In its motion to dismiss, the State of Alabama claim[s] that the petition for post-conviction relief filed by Billy Ray Davis is barred by the limitations period of Rule 32.2(c) of the Alabama Rules of Criminal Procedure. [] The State did not plead as a ground of preclusion that there was undue delay resulting in prejudice to the State as a ground of preclusion. Therefore, this ground for preclusion may not be applied by the court. . . .

In addition, as the issues raised by Billy Ray Davis are based upon newly discovered evidence, as Billy Ray Davis did not unduly delay in petitioning for relief upon discovering these issues and as the State is not prejudiced by the delay, Billy Ray Davis' coram nobis petition cannot be denied due to delay.

Even if the provisions of Rule 32.2 of the Alabama Rules of Criminal Procedure apply to this proceeding, the issues raised

18

> by Billy Ray Davis are not precluded. While Rule 32.2(c) sets
> out a general limitation[s] period for filing petitions for post-
> conviction relief, it provides [an] exception for claims asserting
> newly discovered evidence. . . . Each of these issues raised by
> Billy Ray Davis is predicated upon the newly discovered
> evidence that Robert L. Williams was a suspect in the case who
> fit the physical description of the assailant and who owned the
> exact type blue truck observed near the scene of the crime and
> upon the failure to disclose this evidence by the State of
> Alabama. Therefore, these issues would not [be] precluded by
> Rule 32(c) of the Alabama Rules of Criminal Procedure.

(*Id*. at 56-57, 61-62, 63-64 & 65-67 (emphasis supplied))

## CONCLUSIONS OF LAW

### A.    Statute of Limitations.

1.    The Anti-Terrorism and Effective Death Penalty Act of 1996

("AEDPA") was enacted on April 24, 1996 and, pertinent to this case, added

a new subdivision to 28 U.S.C. 2244 providing for a one-year period of

limitations within which state prisoners must file their habeas corpus petitions

pursuant to 28 U.S.C. § 2254.  *Wilcox v. Florida Dept. of Corrections*, 158

F.3d 1209, 1210 (11th Cir. 1998), *cert. denied sub nom. Wilcox v. Moore*, 531

U.S. 840, 121 S.Ct. 103, 148 L.Ed.2d 62 (2000).

> (d)(1) A 1-year period of limitation shall apply to an application
> for a writ of habeas corpus by a person in custody pursuant to
> the judgment of a State court.  The limitation period shall run
> from the latest of—

>> (A) the date on which the judgment became final by the

19

conclusion of direct review or the expiration of the time for seeking such review;

(B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

(C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

(2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

28 U.S.C. § 2244(d).

2.      In light of the arguments made by petitioner in this case regarding the discovery of new evidence, subsection (D) of § 2244(d)(1) informs this Court's decision regarding the timeliness of the filing of this petition.   In other words, this Court must look to "the date on which the factual predicate of the claim or claims could have been discovered through the exercise of due diligence." 28 U.S.C. § 2244(d)(1)(D). There is nothing in

the record before this Court which in any way undermines the affidavit testimony of David Ragan that he first met with James C. McCloskey, President of Centurion Ministries, at least a year prior to September of 2002 and that at that time gave McCloskey all of the information he had regarding the rape of Ginger Peacock. In fact, McCloskey's affidavit testimony supports Ragan's testimony, McCloskey specifically acknowledging that Davis contacted his organization in August of 1999 and over the course of the next two years he investigated Davis' claims of innocence. Based upon the foregoing, this Court concludes that petitioner could have and did discover the factual predicate of his claims through the exercise of due diligence on or before August of 2001, two years after he first contacted Centurion Ministries.

3.      In light of the foregoing, Davis' one-year period of limitation began to run on August 1, 2001 and expired on August 1, 2002.[10] Petitioner did not file his state collateral attack on his convictions and sentences until September 27, 2002, more than one year after August 1, 2001. Accordingly,

---

[10]      Even if this Court was to use a default date of September 1, 2001 Davis' state collateral attack would still not toll the running of the statute of limitations. In addition, even if this Court was to give petitioner every benefit of the doubt and start the one-year limitations period on October 1, 2001, his state collateral attack--filed on September 27, 2002-- would have tolled the limitations period only after 361 days had run. It is clear that petitioner's collateral attack was completed on November 12, 2004 and that he did not file the instant petition until October 20, 2005; therefore, he would still be time barred by some eleven (11) months.

his state collateral attack did not toll the running of the one-year limitations period and his petition for writ of habeas corpus is due to be dismissed as time-barred pursuant to 28 U.S.C. § 2244(d).

4.     The Eleventh Circuit has determined that § 2244 permits equitable tolling "'when a movant untimely files because of extraordinary circumstances that are both beyond his control and unavoidable even with diligence.'" *Steed v. Head*, 219  F.3d 1298, 1300 (11th Cir. 2000) (citation omitted). Equitable tolling is an extraordinary remedy which is typically applied sparingly.  Mere attorney negligence does not justify equitable tolling. An attorney's miscalculation of the limitations period or mistake is not a basis for equitable tolling.  *Id.* (internal citations omitted); *see also Drew v. Department of Corrections,* 297 F.3d 1278, 1286 (11th Cir. 2002) ("It is by now clear in this Circuit that '[e]quitable tolling can be applied to prevent the application of the AEDPA's statutory deadline when "extraordinary circumstances" have worked to prevent an otherwise diligent petitioner from timely filing his petition.' . . . Although '[e]quitable tolling is an extraordinary remedy which is typically applied sparingly,' . . . it is 'appropriate when a movant untimely files because of extraordinary circumstances that are both beyond his control *and* unavoidable even with diligence.'"), *cert. denied sub*

*nom. Drew v. Crosby*, 537 U.S. 1237, 123 S.Ct. 1364, 155 L.Ed.2d 205 (2003); *Miller v. New Jersey State Dept. of Corrections*, 145 F.3d 616, 618-619 (3rd Cir. 1998) ("[E]quitable tolling is proper only when the 'principles of equity would make [the] rigid application [of a limitation period] unfair.' . . . Generally, this will occur when the petitioner has 'in some extraordinary way . . . been prevented from asserting his or her rights.' . . . The petitioner must show that he or she 'exercised reasonable diligence in investigating and bringing [the] claims.' . . . Mere excusable neglect is not sufficient."); *Calderon v. United States District Court for the Central District of California*, 128 F.3d 1283, 1288 (9th Cir. 1997) (""Equitable tolling will not be available in most cases, as extensions of time will only be granted if 'extraordinary circumstances' beyond a prisoner's control make it impossible to file a petition on time."), *cert. denied*, 522 U.S. 1099, 118 S.Ct. 899, 139 L.Ed.2d 884 (1998) *and cert. denied sub nom. Beeler v. Calderon*, 523 U.S. 1061, 118 S.Ct. 1389, 140 L.Ed.2d 648 (1998). "The burden of establishing entitlement to this extraordinary remedy plainly rests with the petitioner." *Drew*, supra, 297 F.3d at 1286. Petitioner makes no argument that the one-year limitations period should be equitably tolled (*see* Doc. 23), instead arguing that he is actually innocent of the first-degree rape of Ginger Peacock and the first-degree

burglary of her home; therefore, the undersigned simply notes that because attorney negligence does not justify equitable tolling, any negligence on the part of petitioner himself in calculating the limitations period cannot be a basis for equitable tolling. *Cf. Drew, supra*, 297 F.3d at 1286-1287 ("In order to be entitled to the benefit of equitable tolling, a petitioner must act with diligence, and the untimeliness of the filing must be the result of circumstances beyond his control.").

### B.    Procedural Default Doctrine.

5.    In *Coleman v. Thompson*, 501 U.S. 722, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991), the Supreme Court stated that it would "not review a question of federal law decided by a state court if the decision of that court rests on a state law ground that is independent of the federal question and adequate to support the judgment." *Id.* at 729, 111 S.Ct. at 2553-2554. This rule applies whether the state law ground is procedural or substantive. *Id.* at 729, 111 S.Ct. at 2554. The doctrine applies to bar federal habeas review when a state court declines to address a petitioner's federal claims because the petitioner fails to meet a state procedural requirement. *Id.* at 729-730, 111 S.Ct. at 2554; *see also Wainwright v. Sykes*, 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977) (federal courts must honor legitimate state trial and

appellate procedural rules when enforced by state courts and must decline to review on the merits claims that the state treats as barred absent a showing of cause for non-compliance with such rules and resulting prejudice); *Alderman v. Zant*, 22 F.3d 1541, 1549 (11th Cir.) ("Pursuant to the doctrine of procedural default, a state prisoner seeking federal habeas corpus relief, who fails to raise his federal constitution[al] claim in state court, or who attempts to raise it in a manner not permitted by state procedural rules is barred from pursuing the same claim in federal court absent a showing of cause for and actual prejudice from the default."), *cert. denied sub nom. Alderman v. Thomas*, 513 U.S.1061, 115 S.Ct. 673, 130 L.Ed.2d 606 (1994). "In these cases, the state judgment rests on independent and adequate state procedural grounds."  *Coleman*, 501 U.S. at 730, 111 S.Ct. at 2554 (citations omitted).

6.     The application of the independent and adequate state ground doctrine in the habeas context is grounded in concerns of federalism and comity. *Id.*

> Without the rule, a federal district court would be able to do in habeas what this Court could not do on direct review; habeas would offer state prisoners whose custody was supported by independent and adequate state grounds an end run around the limits of this Court's jurisdiction and a means to undermine the State's interest in enforcing its laws.

*Id.* at 730-731, 111 S.Ct. at 2554.

7.    An additional consideration comes to the fore when the independent and adequate state ground supporting a petitioner's custody is a state procedural default.  *Id*. at 731, 111 S.Ct. at 2554.  The Supreme Court has long held

> that a state prisoner's federal habeas petition should be dismissed if the prisoner has not exhausted available state remedies as to any of his federal claims.   (citations omitted)   This exhaustion requirement is also grounded in principles of comity; in a federal system, the States should have the opportunity to address and correct alleged violations of state prisoners' federal rights.

> .      .      .

> [A] habeas petitioner who has failed to meet the State's procedural requirements for presenting his federal claims has deprived the state courts of an opportunity to address those claims in the first instance.  A habeas petitioner who has defaulted his federal claims in state court meets the technical requirement for exhaustion; there are no state remedies any longer "available" to him. (citations omitted)   In the absence of the independent and adequate state ground doctrine in federal habeas, habeas petitioners would be able to avoid the exhaustion requirement by defaulting their federal claims in state court.    The independent and adequate state ground doctrine ensures that the States' interest in correcting their own mistakes is respected in all federal habeas cases.

*Id.* at 731, 732, 111 S.Ct. at 2554-2555, 2555.

8.     In the habeas context, federal courts are to "presume that there is no independent and adequate state ground for a state court decision when the decision 'fairly appears to rest primarily on federal law, or to be interwoven with the federal law, and when the adequacy and independence of any possible state law ground is not clear from the face of the opinion.'" *Id.* at 735, 111 S.Ct. at 2557 (quoting *Michigan v. Long*, 463 U.S. 1032, 1040-1041, 103 S.Ct. 3469, 3476-3477, 77 L.Ed.2d 1201 (1983)); *see Harris v. Reed*, 489 U.S. 255, 263, 109 S.Ct. 1038, 1043, 103 L.Ed.2d 308 (1989) ("[A] procedural default does not bar consideration of a federal claim on either direct or habeas review unless the last state court rendering a judgment in the case 'clearly and expressly' states that its judgment rests on a state procedural bar.").  In all other cases, the presumption is not applicable.  *See Coleman*, 501 U.S. at 739, 111 S.Ct. at 2559.  In *Teague v. Lane*, 489 U.S. 288, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989), the Supreme Court held that the *Harris v. Reed* presumption is inapplicable to a claim that is never presented to the state courts.  *Id*. at 299, 109 S.Ct. at 1069 ("The rule announced in *Harris v. Reed* assumes that a state court has had the opportunity to address a claim that is later raised in a federal habeas proceeding.").   Moreover, the presumption "looks through"

unexplained orders to the last reasoned decision.  *Ylst v. Nunnemaker*, 501

U.S. 797, 804, 111 S.Ct. 2590, 2595, 115 L.Ed.2d 706 (1991).

> Where there has been one reasoned state
> judgment rejecting a federal claim, later
> unexplained orders upholding that judgment or
> rejecting the same claim rest upon the same
> ground.  If an earlier opinion "fairly appear[s] to
> rest primarily upon federal law,"  *Coleman*,[__
> U.S., at __, 111 S.Ct., at 2559], we will presume
> that no procedural default has been invoked by a
> subsequent unexplained order that leaves the
> judgment or its consequences in place.  Similarly
> where . . . the last reasoned opinion on the claim
> explicitly imposes a procedural default, we will
> presume that a later decision rejecting the claim
> did not silently disregard that bar and consider the
> merits.

501 U.S. at 803, 111 S.Ct. at 2594.  Also, the presumption may not be applied

in cases in which the state court opinion did not, at a minimum, discuss the

federal grounds at issue."  *Tower v. Phillips*, 7 F.3d 206, 211 (11th Cir. 1993)

("*Coleman* and *Ylst* lead us to conclude that we may not assume that had the

state court issued an opinion, it would have ignored its own procedural rules

and reached the merits of this case. In fact, the most reasonable assumption is

that had the state court ruled, it would have enforced the procedural bar.").

Finally, "where a state court has ruled in the alternative, addressing both the

independent state procedural ground and the merits of the federal claim, the

federal court should apply the state procedural bar and decline to reach the merits of the claim." *Alderman v. Zant, supra*, 22 F.3d at 1549.

9.    When a petitioner has procedurally defaulted a claim, a federal court is barred from reaching the merits of that claim unless the petitioner "can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claim[] will result in a fundamental miscarriage of justice." *Coleman, supra*, 501 U.S. at 750, 111 S.Ct. at 2565.  The cause and prejudice standard applies "uniformly to all independent and adequate state procedural defaults." *Id.* at 750-751, 111 S.Ct. at 2565.

> In procedural default cases, the cause standard requires the petitioner to show that "some objective factor external to the defense impeded counsel's efforts" to raise the claim in state court. (citation omitted).  Objective factors that constitute cause include "'interference by officials'" that makes compliance with the state's procedural rule impracticable, and "a showing that the factual or legal basis for a claim was not reasonably available to counsel." (citation omitted).  In addition, constitutionally "[i]neffective assistance of counsel . . . is cause." (citation omitted).  Attorney error short of ineffective assistance of counsel, however, does not constitute cause and will not excuse a procedural default. (citation omitted).  Once the petitioner has established cause, he must show "'actual prejudice' resulting from the errors of

which he complains." (citation omitted).

>    Federal courts retain the authority to issue
> the writ of habeas corpus in a further, narrow
> class of cases despite a petitioner's failure to show
> cause for a procedural default.   These are
> extraordinary instances when a constitutional
> violation probably has caused the conviction of
> one innocent of the crime.   We have described
> this class of cases as implicating a fundamental
> miscarriage of justice. (citation omitted).

*McCleskey v. Zant*, 499 U.S. 467, 493-494, 111 S.Ct. 1454, 1470, 113 L.Ed.2d

517 (1991).

    10.   Respondent argues that this Court is procedurally barred from

reaching the merits of all three claims raised by petitioner in the instant habeas

corpus petition because he did timely raise those claims in state court and,

therefore, this Court is barred from reaching the merits of any of the claims

under Alabama Rule of Criminal Procedure 32.2(c) ("Subject to the further

provisions hereinafter set out in this section, the court shall not entertain any

petition for relief from a conviction or sentence on the grounds specified in

Rule 32.1(a) and (f), unless the petition is filed: (1) In the case of a conviction

appealed to the Court of Criminal Appeals, within one (1) year after the

issuance of the certificate of judgment by the Court of Criminal Appeals under

Rule 41, Ala.R.App.P.; or (2) in the case of a conviction not appealed to the

Court of Criminal Appeals, within one (1) year after the time for filing an

appeal lapses; provided, however, that the time for filing a petition under Rule

32.1(f) to seek an out-of-time appeal from the dismissal or denial of a petition

previously filed under any provision of Rule 32.1 shall be six (6) months from

the date the petitioner discovers the dismissal or denial, irrespective of the one-

year deadlines specified in the preceding subparts (1) and (2) of this sentence;

and provided further that the immediately preceding proviso shall not extend

either of those one-year deadlines as they may apply to the previously filed

petition. The court shall not entertain a petition based on the grounds specified

in Rule 32.1(e) unless the petition is filed within the applicable one-year

period specified in the first sentence of this section, or within six (6) months

after the discovery of the newly discovered material facts, whichever is later;

provided, however, that the one-year period during which a petition may be

brought shall in no case be deemed to have begun to run before the effective

date of the precursor of this rule, i.e., April 1, 1987."). The trial and appellate

court applied the statute-of-limitations bar set forth in Ala.R.Crim.P. 32.2(c)

to all claims raised by Davis; therefore, this Court agrees with the respondent

that this Court is procedurally barred from reaching the merits of all three

grounds raised in the petition absent a showing of cause and prejudice. *See,*

*e.g., Alderman, supra*, 22 F.3d at 1549 ("Pursuant to the doctrine of procedural default, a state prisoner seeking federal habeas corpus relief, who fails to raise his federal constitution[al] claim in state court, or who attempts to raise it in a manner not permitted by state procedural rules is barred from pursuing the same claim in federal court absent a showing of cause for and actual prejudice from the default."); *Pitts v. Cook*, 923 F.2d 1568, 1571 (11th Cir. 1991) ("When a defendant is barred from raising a federal constitutional claim in the state courts because of his failure to follow the state's procedural rules, he is also barred from raising the claim in his federal habeas petition absent a showing of cause for, and actual prejudice from, the procedural default. . . . So Pitts' unraised *Batson* claim cannot be considered in the federal courts unless he is able to show cause and actual prejudice."). Therefore, in order for this Court to reach the merits of any ground of the petition, Davis must "demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman, supra*, 501 U.S. at 750, 111 S.Ct. at 2565.

11.    In responding to respondent's procedural default argument, petitioner nowhere sets forth a cause and prejudice argument for his procedural

default of the foregoing issues, instead simply arguing that a procedural default did not occur,[11] and therefore, it is found that the cause and prejudice exception to the procedural default doctrine is not applicable in this case. *See Macklin v. Singletary*, 24 F.3d 1307, 1313 (11th Cir. 1994) (in abuse of the writ case, appellate court suggests that habeas courts need perform no analysis when the petitioner fails to argue an exception to application of the doctrine), *cert. denied*, 513 U.S. 1160, 115 S.Ct. 1122, 130 L.Ed.2d 1085 (1995); *Tower v. Phillips*, *supra*, 7 F.3d at 211 (court addressed only the single cause argument proffered by the petitioner).

12.    The fundamental miscarriage of justice/actual innocence exception does not apply in this case because petitioner has not satisfied the standard set forth in *Murray v. Carrier*, 477 U.S. 478, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986).    That standard requires Davis to show that "a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Id*. at 496, 106 S.Ct. at 2649-2650.  To be credible, a claim

---

[11]    Davis argues in a conclusory manner that his claims are not precluded because Ala.R.Crim.P. 32.2(c) "provides an exception for claims asserting newly discovered evidence[]" and all three of his claims are grounded upon newly discovered evidence. (Doc. 23, at 66-67) However, as clearly recognized by the Alabama Court of Criminal Appeals, claims based on newly discovered evidence must be asserted in a Rule 32 petition filed within six (6) months of the newly-discovered evidence and this was not done. Accordingly, the procedural bar set forth in Rule 32.2(c) is applicable.

of actual innocence "requires petitioner to support his allegations of constitutional error with new reliable evidence--whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence--that was not presented at trial." *Schlup v. Delo,* 513 U.S. 298, 324, 115 S.Ct. 851, 865, 130 L.Ed.2d 808 (1995); *see also id.* at 327, 115 S.Ct. at 867 ("To establish the requisite probability, the petitioner must show that it is more likely than not that no reasonable juror would have convicted him in the light of the new evidence."). Davis has not come forward with any type of evidence referenced in *Schlup, supra*--that is, no exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence-- which establishes his actual innocence and thereby undermines the jury's determination that he was guilty of the October 18, 1983 first-degree rape of Ginger Peacock and the first-degree burglary of Peacock's home.[12]

---

[12]     Stated differently, viewing all of the evidence presented at Davis' trial in the light most favorable to the prosecution, the undersigned is of the opinion that any rational trier of fact could have found the essential elements of first-degree rape and first-degree burglary beyond a reasonable doubt and, therefore, the facts of this case do not support a conclusion that there will be a fundamental miscarriage of justice if this Court does not consider the federal claims raised in the instant petition. *See Murray v. Carrier, supra*, 477 U.S. at 496, 106 S.Ct. at 2649. After all, there was eyewitness testimony from Ginger Peacock that petitioner entered her home without her permission and repeatedly raped her and the forensic evidence linked Davis to Peacock's rape. While Davis has always contended that he did not commit the crimes and relies upon hearsay evidence that a man named Robert Williams "may" be responsible for the crimes, in absence of other compelling evidence, such as the reliable confession of Williams, Davis' burden under *Murray, supra*, and its progeny has not been satisfied.

Accordingly, this case is not one of those rare cases in which the actual innocence exception is applicable.

## **CONCLUSION**

The Magistrate Judge is of the opinion that the instant petition should be dismissed as time barred pursuant to 28 U.S.C. § 2244(d). Alternatively, the petition is due to be denied on the basis that this Court is procedurally barred from reaching the merits of the grounds raised in the petition.

The attached sheet contains important information regarding objections to the report and recommendation of the Magistrate Judge.

**DONE** this the 26th day of March, 2007.

s/WILLIAM E. CASSADY
**UNITED STATES MAGISTRATE JUDGE**

**MAGISTRATE JUDGE'S EXPLANATION OF PROCEDURAL RIGHTS AND
RESPONSIBILITIES FOLLOWING RECOMMENDATION, AND
<u>FINDINGS CONCERNING NEED FOR TRANSCRIPT</u>**

l.      ***Objection***.  Any party who objects to this recommendation or anything in it must, within ten days of the date of service of this document, file specific written objections with the Clerk of this court.  Failure to  do so will bar a *de novo* determination by the district judge of anything in the recommendation and will bar an attack, on appeal, of the factual findings of the Magistrate Judge.  *See* 28 U.S.C. § 636(b)(1)(C); *Lewis v. Smith*, 855 F.2d 736, 738 (11th Cir. 1988); *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. Unit B, 1982)(*en banc*).  The procedure for challenging the findings and recommendations of the Magistrate Judge is set out in more detail in SD ALA LR 72.4 (June 1, 1997), which provides that:

> A party may object to a recommendation entered by a magistrate judge in a dispositive matter, that is, a matter excepted by 28 U.S.C. § 636(b)(1)(A), by filing a 'Statement of Objection to Magistrate Judge's Recommendation' within ten days after being served with a copy of the recommendation, unless a different time is established by order.  The statement of objection shall specify those portions of the recommendation to which objection is made and the basis for the objection.  The objecting party shall submit to the district judge, at the time of filing the objection, a brief setting forth the party's arguments that the magistrate judge's recommendation should be reviewed *de novo* and a different disposition made.  It is insufficient to submit only a copy of the original brief submitted to the magistrate judge, although a copy of the original brief may be submitted or referred to and incorporated into the brief in support of the objection.  Failure to submit a brief in support of the objection may be deemed an abandonment of the objection.

A magistrate judge's recommendation cannot be appealed to a Court of Appeals; only the district judge's order or judgment can be appealed.

2.      ***Transcript (applicable Where Proceedings Tape Recorded)***.  Pursuant to 28 U.S.C. § 1915 and FED.R.CIV.P. 72(b), the Magistrate Judge finds that the tapes and original records in this case are adequate for purposes of review.  Any party planning to object to this recommendation, but unable to pay the fee for a transcript, is advised that a judicial determination that transcription is necessary is required before the United States will pay the cost of the transcript.


                              s/WILLIAM E. CASSADY
                              UNITED STATES MAGISTRATE JUDGE